IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES L. DORSEY,                )
                                )
          Plaintiff,            )
                                )
     vs.                        )     Case No. 15 C 9876
                                )
TARRY WILLIAMS, et al.,         )
                                )
          Defendants.           )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

James Lee Dorsey has filed a *pro se* lawsuit under 42 U.S.C. § 1983 against several current and former officials and officers at Stateville Correctional Center. He alleges that they retaliated against him for filing grievances and a lawsuit, in violation of his rights under the First Amendment. Specifically, Dorsey contends that the defendants shook down his cell and strip searched him on September 11, 2014 and that they later falsely denied grievances he submitted regarding these incidents. The defendants have moved for summary judgment.

Dorsey filed a series of grievances against Timothy Washington on November 29, 2012, saying that Washington, a prison counselor, had taken actions that put Dorsey's safety at risk. The grievance were denied by Anna McBee, a grievance officer, and by then warden Michael Lemke. Dorsey filed other grievances against other Stateville officials and officers during 2013. In April 2014, he filed a grievance against Sergeant Boyce for conduct during execution of a court writ. McBee and a designee of

warden Tarry Williams responded.  In or about May 2014, Dorsey sent a letter to then Governor Patrick Quinn complaining about Boyce's conduct; this letter was forwarded to warden Williams.  A designee of Williams sent Dorsey letters in mid-June 2014 stating that his complaint had been forwarded to assistant warden Lamb for review.  Later, in September 2014, Dorsey filed a lawsuit against Washington for the conduct that was the subject of his earlier grievances.  That lawsuit is still pending and is awaiting trial.

The present case concerns, initially, events that took place on September 11, 2014.  Dorsey says that on September 10, 2014, he handed counselor Jill Hosselton his complaint against Washington for photocopying.  On September 11, Dorsey was housed in a cell in Delta House along with Andrew Long, another inmate.  He says that the Stateville tactical team, commonly known as "orange crush," "shook down certain cells in Delta House."  Dorsey Affid. ¶ 3.  Two African-American officers stood in front of his cell.  Officer Leroy Banks and another unknown officer directed Dorsey and Long to remove their clothing, and a search of their persons, including body cavities, was then performed.  Dorsey and Long then got dressed, were handcuffed, and were taken to the stairway area by Banks and the other officer.  Banks and the other officer then returned to Dorsey and Long's cell.  Sergeant Russell Baker helped Dorsey (who was walking with a crutch) down the stairs.  Lieutenant Daniel Artl, who was standing on the gallery, observed this along with assistant warden Lamb.  Dorsey says that, "along with other inmates," he was then escorted from Delta House to the chow hall, where he was placed at a table.  *Id.* ¶¶ 8-9.  He and "multiple other inmates" were left there for several hours.  *Id.* ¶ 10.  Before returning to Delta House, Dorsey "and other inmates were strip searched for a second time" in the tunnel area of the chow hall by unknown officers.  *Id.*

2

¶ 11. When Dorsey returned to his cell, he saw that his property had been thrown around; he testified during his deposition that this is common in shakedowns. *See* Dorsey Dep. 41-42. This, he says, was observed by counselor Hosselton, who walked past his cell. Dorsey says that he has been strip searched and his cell has been shaken down on other occasions, and each time he was given a "shake down slip," but that did not happen on this occasion. Dorsey filed a grievance regarding the shakedown on September 15. The response to the grievance said that according to the shakedown team, his cell was not shaken down. *See* Dorsey Dep. 35-36.

During his deposition, when Dorsey was asked whether other inmates were strip searched on September 11, he testified, "They hit certain cells. They went to 9 gallery, 7 gallery. . . . 5 gallery and some on 3 gallery. So it was a bunch. It was many, over a hundred." Dorsey Dep. 32. When asked why he thinks—seeing as how so many others were strip searched—that *he* was being retaliated against, Dorsey said, "Because I'm the only inmate that didn't get a shake-down slip, and they denied strip searching me and shaking me down at all." *Id.* Dorsey also says that officer Banks appeared to him to be a friend of counselor Washington and that he had seen them talking on prior occasions.

To sustain a claim of retaliation for exercise of First Amendment rights in the prison context, a plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that likely would deter protected activity in the future; and his protected activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Dorsey's filing of a lawsuit and grievances meet the first requirement,

but the defendants argue that he cannot establish either of the other two.

The Court, taking the evidence in the light most favorable to Dorsey as required on a motion for summary judgment, concludes that Dorsey cannot sustain his retaliation claims. Based on the evidence Dorsey has submitted, no reasonable jury could find that the shakedown or strip searches were motivated by his filing of grievances or the lawsuit against counselor Washington. Though the events of September 11 came just one day after Dorsey says he handed his complaint to counselor Hosselton for copying, Dorsey was not singled out that day for a shakedown or strip search; he says the same thing happened to "hundreds" of other inmates. No reasonable jury could infer from this that *Dorsey* was being singled out for retaliation. The theory, one assumes, would be that the defendants also searched hundreds of others in order to conceal that they were singling him out, but no jury could *reasonably* infer that this is what happened. (Dorsey admits that what took place on September 11 was similar to other shakedowns that had occurred in the past.)

Dorsey also contends that the shakedown team later falsely denied searching his cell and that those who dealt with his grievance did not investigate this denial adequately. But this, too, is insufficient to sustain his retaliation claim. Dorsey has no viable contention that the false denial caused him any harm; he was harmed by the shakedown, not by the denial that it occurred. And even if Dorsey could make a viable contention that he was harmed by the false denial, no reasonable jury could conclude that simply falsely denying a grievance would deter any reasonable inmate from exercising his rights to file grievances or lawsuit in the future.

4

**Conclusion**

For the reasons stated above, the Court grants defendants' motion for summary judgment [dkt. no. 47] and directs the Clerk to enter judgment in favor of the defendants and against plaintiff.

Date: January 16, 2018

_____